v. SOUTHERN CALIFORNIA EDISON COMPANY Good morning, Your Honors. Lillian Tomich, appearing for Appellant Laudan Zivcovic. Your Honors, this is a case, a reasonable accommodation interactive process case. It involves a deaf job applicant who was required to undergo oral pre-employment tests without any accommodation. The failure to accommodate him resulted in him giving inadequate responses to questions that were asked of him, and it resulted in Edison's failure to hire him. The claim based on reasonable accommodation relies on specific provisions of the Americans for Disabilities Act. What accommodation was he denied? He was denied all accommodations, Your Honor. Name one. He was denied the accommodation to read the questions. He was denied an accommodation to have them repeated. He was not offered an accommodation of an interpreter, although the Judge Taylor in the District Court made a finding that there was an oral offer of an interpreter. That's a finding that we're bound with. You're bound with that finding, but there is no supportive evidence to that finding because the offer, if made, was made orally to a deaf person. There is no evidence in the record to show that he understood that an offer had been made to him, so that he was denied all accommodations. Because there was an answer when he was asked if he wanted an interpreter, that the evidence was that he answered that he didn't. If he gave an answer, which he denies he even was asked, the answer could have been to another question that he understood was given to him. He said in the record that he had no knowledge of any offer being made to him, and there is no proof that he had. Well, but there's other evidence from other witnesses that there was an offer and that he rejected it. Well, I believe that the only evidence came from Fagan. Well, but see, that's what trial courts do. I understand that. And the trial court credited that, so it seems that unless that's somehow clearly erroneous, we're bound by it. It is clearly erroneous because there is no supportive evidence that he understood the offer because he was deaf. There wasn't an interpreter there. He could have given it to him in writing, but he made it orally, and he conducted the entire hearing orally to someone who could not hear any of the questions. I also thought there was evidence that he was allowed to read some of the questions. There was an allegation that in the first interview that he was allowed to read a question, but again, Your Honors, the supportive evidence doesn't support that conclusion or that statement by the witness. Why not? Because the witnesses. If a witness says that and the trial court believes it, why isn't it supported? Because the witnesses who so testified in court in their own documentary records of those interviews said that this applicant is having a problem understanding the questions because of his hearing problem. If he was given a question to read, he wouldn't have had a problem hearing the question. In the second interview, the final interview, it is very clear and undisputed that there was nothing shown to him in writing. There was nothing shown to him to read, although he testified that he had asked to read the questions, and the response to him was that the interview had to be oral. But in the last interview, he had nothing shown to him. No interpreter was present, although he had asked for one initially after the first interview, and he was not even given the courtesy of having questions repeated to him more than once or twice. In the first interview, questions were repeated to him three and four times, again showing nothing was shown to him to read, and yet even at that point, he had a difficulty reading their lips. So as far as the record shows, he did not have any accommodation. Do you want to save the rest of your time and respond to the other side? Okay, I just wanted to add, may I? How much time do I have left? You have plenty of time. I just wanted to add that the tests themselves were also violative of the specific requirements set forth in the ADA, particularly paragraphs 3, 6, and 7, in which they prohibit the utilization of a format that relies on, requires the use of the impaired skill. Was that issue raised in the district court? I believe it was in our trial briefs. I think we objected to that. Yes, we did. In other words, you think if I look at the pleadings or the free trial order or what, where am I going to find that issue? We raised the issue to the court that the tests that were conducted were done in a discriminatory manner. Well, I understand that, but that's a different point. I mean, you're saying he was discriminated against because of the fact that he was here. But did you specifically raise the issue about whether a written test in and of itself runs afoul of the ADA? Yes, we did, Your Honor. And in our first appeal, we raised that issue that the tests were discriminatory. Talking about in the district court. Yes. The district court, in its pretrial restriction on the issues to be tried at the trial, said that he did not believe that this was the issue in the case. But we raised it to the court. Now, was there some objection to that ruling? We objected to that. I'm sorry. I didn't see it anywhere, so. How does that work? You're objecting that the test was oral and that's the problem. Yes. Therefore, the test is invalid. Is that what you're saying? I'm saying that the job applicant was not given an accommodation as required by the law that is mandatory upon the employers to know all of this. But you're attacking the test itself as barred. Why? Because it requires of the applicant the use of the skill with respect to which he's impaired. Right. That's a whole different body of law. That's sort of the point I'm making. I mean, that's the whole Albertson's problem and it's a UPS problem. I mean, it's that the test itself is a problem. I mean, see, that requires an entirely different body of evidence and argument and whatever. Well, I'm just noting that the ADA does state this. Oh, I know it states it. Well, it happened in this case. But in addition to that, even with the use of that test, the young man was not given any type of an accommodation. Edison did not engage in an interactive process to consult with him, to have a dialogue with him. What do you need or what are your limitations? If they made that alleged offer, it was only a one-time event. And under Humphrey and under other cases that have been cited, this is insufficient. A one-time effort does not exhaust their duty to accommodate. Was one of the requirements of his job that he talk to customers? No, it was not. It wasn't. It was not in the job description, in the written description either. He was to be a meter reader to look at the meters. And he was fully able to perform the essential functions of that position. And that was not disputed. All right. Why don't you save the rest of your time and respond to the other side. Thank you. Thank you, Counsel. Good morning, Your Honor. May it please the Court. William Davis Horne on behalf of the Southern California Edison Company. The Court needs to affirm the trial court's decision granting judgment on behalf of Southern California Edison Company. The Court made specific findings of fact. It followed the Court of Appeals roadmap in the first opinion of this court that was issued in 2002 and went back, readdressed the evidence, heard the argument of counsel, and made a disposition and reported that in a judgment. I think the one case that would specifically dispose of these issues on whether or not the decision was, or the factual findings were clearly erroneous is Fisher v. Roe, 213F3906 at 912, where this court said, where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. And that's what we have in this case. We had two different competing sets of evidence that was presented to the trial court, and the trial court made a decision. It called it the way Edison presented the case and adopted it as a version of the facts. The plaintiff is, excuse me, the appellant in this case has argued that there was no evidence that Mr. Zivkovic understood that he was being asked whether or not he wanted an interpreter at the second interview. But both Mr. Fagan and Mr. Sumter stated that they had asked Mr. Zivkovic the question if he wanted an interpreter, and that Mr. Zivkovic said to them he didn't need one. That clearly infers that he understood their question and was fully prepared to proceed without an interpreter. Edison satisfied its duty of providing reasonable accommodation once it made that offer. Mr. Zivkovic, according to the district court and according to the evidence, chose to proceed with the interview and didn't pass. He made no other requests for accommodation in the course of that interview. Under those circumstances, even under the Humphrey case that the appellant cites before the court today, Edison met its duty. It had no information or request or facts which put it on notice that further accommodation might need to be explored in this particular case. I want to point out that at the outset of this case, and it was clearly understood, and even as the appellant conceded in portions of her argument, that Mr. Zivkovic could read lips and he could do so quite well. There was evidence presented that he could do so. However, Edison will concede that there is a minor flaw in the court's finding. There was no specific testimony that Mr. Zivkovic said after he said he didn't need an interpreter. There was no specific testimony by either Mr. Fagan or Mr. Sumter that Mr. Zivkovic said to them at that moment in time he could read lips well. However, Mr. Fagan had previously made reference to that fact and there was a document that Mr. Fagan had prepared upon which he was cross-examined at length in which he stated in the document that Mr. Zivkovic had previously told him that he could read lips quite well when he first met him. The surrounding evidence in this fact infers that Mr. Zivkovic completely understood the request that was made to him at that time and the court made a correct finding. With respect to the legal issues in this case, well, let me back up one moment. There was other ample evidence in the record and Edison has cited to those portions of the record which support the district court's findings of fact throughout this case with that one minor exception that I pointed out. With respect to the legal question of whether or not Southern California engaged in the interactive process, the courts laid out a roadmap as to what would be required and Edison met that requirement. It considered Mr. Zivkovic's request at the end of the first interview, which was really in effect only a suggestion that he might have understood the first interviewer's questions a little better and not had to have read the questions when they showed them to him if he had had an interpreter. Edison inquired. This court said that a mere inquiry to his mother, even though she was his designated agent for purposes of receiving telephone calls and further inquiries about his candidacy was insufficient. She told him he didn't need one. Edison nevertheless asked him again at the beginning of the next interview, would he like to proceed or could he use or benefit from having an interpreter and he said he didn't need one. They proceeded. He was not selected for the job because he had a lack of job skills and job qualifications. There was no evidence that any decision was made pretextually. There was no evidence that he was required to go through the interview without an interpreter. He chose to do so on his own. That leads into briefly what the district court did was to address the issues that counsel for appellant has tried to raise to the court today about whether requiring an individual to go through an oral interview when he's hearing impaired necessarily violates the ADA. That would be subsection B6 and B7 of section 12.1.12. The answer to that question in this case is if we required him to do that and we refused to offer him any accommodation whatsoever, then perhaps giving an oral interview would have a tendency to screen out an individual who has a hearing impairment. However, if the individual chooses to proceed without one and there's no requirement that he needs to and, in fact, is given at one point in the accommodation process the opportunity to read the questions, there can't be a violation of B6 or B7. Well, you're talking about B6 and B7 and 12.1.12. Was that raised as an issue in the district court? Because I looked over it again and I don't see any mention of it. You're absolutely correct, Your Honor. There was an attempt to bring that issue into play at our pretrial conference with Judge... Yes, thank you, Your Honor. There was some discussion and Judge Taylor simply said, no, that's not the issue of this case. The issue in this case is was there an accommodation offered to him or provided and was there discrimination on the basis of disability when he was not selected for the position? In other words, was the company's explanation for its reasons for not selecting him... So, just to interrupt for a second, what happened? It was pled in this case. So did the issue just disappear? No. The pleadings in this case were filed pro per by the plaintiff. Right. I'm just looking at the... Very, very... I'm looking at the amended complaint. The amended complaint was never accepted by the court. The court ruled that the plaintiff's or Mr. Zucco's efforts to amend the complaint came way too late in the discovery process and in the course of litigation. Was that made an issue the first time this case came up? Yes, Your Honor. On the first time this case came before the court and Judge Thomas was on the panel, there were a number of procedural issues raised with respect to plaintiff's late election for a jury trial, plaintiff's late efforts to amend the complaint, plaintiff's efforts to delay or move the trial. Yes, but what about the 12-1-12-B issue? No, that was not raised on the prior... It may have been attempted to be raised in the prior appeal, but it was not addressed on appeal. No, it wasn't. In the first instance, because it was not an issue at the trial court below, the court simply said it's not going to raise or address that issue. It wasn't framed by the initial pleadings in the complaint. There's an extensive record, in the record, there's an extensive transcript of the conversation with Judge Taylor prior to the initial trial. I got you. What happened was, yeah, we held that the denial of the amended complaint was not an abuse of discretion, and that's where the issue that 12-1-12-B, 6 and 7 are raised, right? Okay. Anything else, counsel? That's it. Thank you. Do we have any other questions for me? No. Thank you, Your Honors. To correct what was in the record, when the alleged offer was made and found by the court to have been made, for an interpreter in the second interview, the response in the record is from Mr. Zipcovich that he had said no. He did not say he didn't need one, as counsel just represented to the court. The response no was stated to what that referred to. We can't address that because there's nothing in the record to say that that was addressed to an interpreter from the point of view of the appellant. The second objection that the Edison position makes is that there was no request made for an additional accommodation in the second interview. That is true. He did not make, at least on the record, what the court found, that he did not make additional requests. The plaintiff did request to have questions repeated. The court made no finding on that. The plaintiff said he did make requests to read the questions, which were denied to him, saying that they had to be oral. But the court made a finding that he had not made that request. Either way, the fact remains that the record does say that during this second interview, he was not comprehending. That is in the testimony. He was having a problem. He indicates that he asked to have questions repeated, which again indicates he was having a problem. Where the employer is aware of a disability and where he is aware that there is a problem in comprehending, for example, it is the duty again for the employer to step in to try to help to accommodate that disabled person. Did the employer call his mother? Yes, he did. And for what purpose did the employer call his mother? To tell her that there was going to be an interview, the first interview. And the mother responded to the employer, to Mr. Fagan, are you going to have an interpreter there for him? And Mr. Fagan said? And he said, do you think he really needs one? And the mother said? And she said, ask my son. And that's exactly what the ADA requires is the direct communication with the applicant or the employee who is disabled. And then Mr. Fagan and his people say, and we asked the son. We asked him orally just before they walked into the. And the court found that his answer was, no, I don't. That's what the court found, no, was what the court found. But that, again, is insufficient in the interactive process. One attempt at an accommodation is not sufficient. Under those circumstances, what do you think the law required them to do? Ask the mom. Mom says, ask him. They ask him. He says, no. What does the law mandate at that point? The law mandates that they make an attempt in good faith to talk to him in writing or bring an interpreter in so that we can communicate to find out what does he need, if they can accommodate that, if it's not burdensome for the company to do something in that regard, either to let him read it, to repeat the questions a little bit more, or get him an interpreter. Those were very simple accommodations, and they provided none of that. And the law is rather clear. I mean, there's. So even if the handicapped person suggests, I don't want it, the law requires you to do it anyway. Are you saying that he doesn't want an interpreter? You're saying that companies have said, well, even if you don't want one, we're going to bring one in. No, I'm saying if they want to engage in an interactive process, if they cannot communicate with him to ask him what do you need, perhaps they could have brought an interpreter just to communicate with him or do something in writing, or they could have given him a written test. He passed two of the other written tests. They could have taken him out in the field to test him on the reading of the meters. There are many things they could have done to accommodate the situation, rather than ask him questions that he could not hear or see, and then based on those questions, evaluate him as to the responses he gave, whether he was competitive with other people who could hear. Do you have anything else you'd like to say on the 12-1-12, B-5, and 6 issues? Well, on the 6 issue, I think we more or less covered it. I think on the B-5 issue, I would just like to interject that during the, or in the decision of the court, the judge intertwined into the question whether there was an accommodation, whether there was an interactive access provided for to identify an accommodation and to implement it. The court interjected the issue of pretext by articulating non-discriminatory reasons that were given by the testimony of the Edison witnesses on the stand to say he wasn't competitive, he lacked job skills, therefore it was appropriate for him not to be hired. But what I would like to just end with is that there was a comment made that when he made his first request for an interpreter after the first interview, it was simply an inquiry. According to Zivkovic 1 in the appeal that we had on this case, the Ninth Circuit Court stated that that request or that statement of his need for an interpreter triggered the interactive process, which coupled with his application that said he was hard of hearing was enough to put the employer on notice that something had to be done. And it wasn't. Thank you, counsel. Thank you very much. The case is just argued as ordered and submitted. We'll take a five-minute recess before hearing the rest of the cases. All rise. We're going to go ahead and recess for five minutes. And the next case to be argued will be USA v. Days. The case is just argued as ordered. We'll take a five-minute United States Court of Appeals is behind circuit. I'll resume the session. United States v. Dice, please begin. Good morning, Your Honors.
judges: Trott, Rymer, Thomas